UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE COMMISSION,
           Plaintiff,

           - against -

JOSEPH M. DUPONT,
SHAWN P. CRONIN,
STANLEY KAPLAN,
PAUL FELDMAN, and
JARETT G. MENDOZA,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF Case

No. 23 Civ. 5565 (VM)

# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION TO INTERVENE AND FOR A FULL STAY OF PROCEEDINGS

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the United States
of America.

Margaret Graham
Sarah Mortazavi
Samuel P. Rothschild
Assistant United States Attorneys
    *- Of Counsel -*

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................................................... 1

**FACTUAL BACKGROUND** ................................................................................................... 2

    Overview of the Alleged Scheme .................................................................................. 2

    Procedural Posture ......................................................................................................... 4

**ARGUMENT** ............................................................................................................................. 4

   I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE ....... 5

  II.    THE PROPOSED STAY IS APPROPRIATE .................................................................. 7

    A.   Applicable Law ..................................................................................................... 7

    B.   Discussion ............................................................................................................. 8

        1.   The Extent of Overlap ................................................................................... 8

        2.   Status of the Criminal Case .......................................................................... 9

        3.   The Plaintiff's Interests ................................................................................. 9

        4.   The Defendants' Interests ............................................................................. 9

        5.   The Public Interest ...................................................................................... 10

        6.   The Interests of the Courts .......................................................................... 12

**CONCLUSION** ....................................................................................................................... 13

**PRELIMINARY STATEMENT**

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application (1) to intervene in the above-captioned case (the "Civil Case"), pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (2) for a full stay of the Civil Case, including a stay of all discovery, until the conclusion of the parallel criminal case, *United States v. Joseph Dupont, Shawn Cronin, Slava (Stanley) Kaplan, and Paul Feldman*, No. 23 Cr. 320 (GHW) (the "Criminal Case").[1]

Courts in this District frequently stay civil proceedings that have the potential to affect a criminal case. Here, all of the conduct that is at issue in the Civil Case is also at issue in the Criminal Case, meaning that common issues of law and fact exist. The stay sought by the Government will conserve this Court's time and resources, because the outcome of the Criminal Case is likely to have a significant impact on what issues are ultimately in dispute in the Civil Case. Moreover, allowing discovery in the Civil Case to proceed without restriction risks giving the defendants who are still contesting liability, Joseph M. Dupont, Shawn P. Cronin, Stanley Kaplan, and Paul Feldman (the "defendants"), the tools to improperly obtain impeachment material regarding the Government's witnesses, circumvent the criminal discovery rules, and improperly tailor their defenses in the Criminal Case.

Counsel for the defendants have informed the Government that the defendants consent to

---

1  Defendant Jarett Mendoza is separately charged and has pled guilty pursuant to a cooperation agreement. *United States v. Jarett Mendoza*, No. 23 Cr. 316 (ER). Mendoza has admitted liability in the Civil Case and the Court has entered a judgment as to him.  *See SEC v. Jarett Mendoza*, No. 23 Civ. 5565 (VM), Dkt. Nos. 12-13.

the issuance of a stay in the Civil Case. The SEC has informed the Government that it takes no position on the request for a stay.

## FACTUAL BACKGROUND

The Civil Case and the parallel Criminal Case arise out of allegations that the defendants participated in an insider trading scheme surrounding the announcement of the acquisition of pharmaceutical company Portola Pharmaceuticals, Inc. ("Portola") by pharmaceutical company Alexion Pharmaceuticals, Inc. ("Alexion"). The relevant factual allegations are set forth in Indictment 23 Cr. 320 (GHW) (the "Indictment") (attached hereto as Exhibit A), and in the SEC's complaint against Dupont, Cronin, Kaplan, Feldman, and Mendoza (the "SEC Complaint") (Dkt. No. 1 in No. 23 Civ. 5565 (VM)).

### Overview of the Alleged Scheme

The Indictment alleges twenty-two criminal counts against Dupont, Cronin, Kaplan, and Feldman. Count One charges Cronin, Kaplan, and Feldman with conspiring with Mendoza and others to commit securities fraud and tender offer fraud. Counts Two through Eleven variously charge Dupont, Cronin, Kaplan, and Feldman with committing securities fraud under Title 15 of the United States Code. Count Twelve charges Dupont, Cronin, Kaplan, and Feldman with securities fraud under Title 18 of the United States Code. Counts Thirteen through Twenty-Two variously charge Dupont, Cronin, Kaplan, and Feldman with tender offer fraud. The charges in the Indictment relate to the defendants' insider trading scheme, carried out in or about April and May 2020, whereby Cronin, Kaplan, Feldman, and Mendoza bought and sold securities based on material nonpublic information ("MNPI") that Dupont misappropriated from his employer, Alexion.

As alleged in the Indictment, at least as early as in or about April 2020, Dupont tipped his childhood friend Cronin with valuable, nonpublic information that Dupont had learned in the course of his employment as a Vice President at Alexion, namely, that Alexion was imminently going to acquire Portola, a publicly-traded biopharmaceutical company. After the tip, and over the course of in or about April 2020, Cronin purchased Portola stock and call options on the basis of the MNPI that he received from Dupont, and also tipped two friends, both of whom were known to Dupont—Kaplan and Mendoza—regarding the pending acquisition so that they too could make profitable trades in Portola stock and options.   (Indictment ¶ 2).

In or about April 2020, Kaplan purchased both stock and call options in Portola based on the MNPI that he had received from Cronin. Kaplan further told other individuals to purchase Portola stock, including a member of his family ("Kaplan Family Member-1") and Feldman. Kaplan described the planned acquisition of Portola to Feldman as a "high confidence event." Feldman, after hearing the news of the upcoming acquisition, texted Kaplan: "I'm gonna owe you big."   (Indictment ¶ 3).

Although Feldman had purchased Portola stock historically, he began aggressively purchasing call options in Portola based on the inside information about the Portola acquisition that he received from Kaplan. Feldman, like Kaplan, shared that information with friends, family, and colleagues, including a member of his family ("Feldman Family Member-1") and four associates ("Individuals-1, -2, -3, and -4").   In instructing Individual-1, a colleague from work with whom Feldman was close, to purchase Portola stock, Feldman wrote, "Buy 50 more PTLA [Portola]. Youll [sic] be slightly more on margin. After the buyout you can sell it all," referring to the upcoming Portola acquisition. (Indictment ¶ 4).

Based on the MNPI that Dupont misappropriated from Alexion, Dupont, Cronin, Kaplan, and Feldman collectively caused at least seven other people to trade in Portola stock. (Indictment ¶ 5).

Alexion's acquisition of Portola was announced publicly on the morning of May 5, 2020. Portola's stock increased significantly in value. Cronin, Kaplan, Feldman, and their tippees sold their shares of Portola and call options for Portola stock, reaping millions of dollars of illegally-obtained trading profits. (Indictment ¶ 6).

Procedural Posture

On June 28, 2023, Mendoza pled guilty before the Honorable Edgardo Ramos, United States District Judge for the Southern District of New York, to the charges in the Information pursuant to a cooperation agreement with the Government. That same day, a Grand Jury sitting in the Southern District of New York returned the Indictment against Dupont, Cronin, Kaplan, and Feldman. On June 29, 2023, Kaplan and Feldman were arrested in the Southern District of New York and presented and arraigned before the Honorable Sarah L. Cave, United States Magistrate Judge for the Southern District of New York. That same day, Dupont and Cronin surrendered to authorities in the District of Massachusetts and were presented before the Honorable Donald L. Cabell, United States Magistrate Judge for the District of Massachusetts. The Honorable Gregory H. Woods, United States District Judge for the Southern District of New York, held an initial pretrial conference in the Criminal Case on July 24, 2023 and scheduled the next conference for November 28, 2023.

The SEC Complaint was filed on June 29, 2023.

**ARGUMENT**

The Government's unopposed request to intervene and for a full stay should be granted.

If litigation and discovery in the Civil Case were to proceed at this time, there would be a risk of significant interference with the Criminal Case as well as waste of this Court's time and resources. The stay requested would not prejudice any of the parties to the Civil Case; would prevent the circumvention of important limitations on criminal discovery; and would preserve the Court's resources because many of the issues presented by the Civil Case will be resolved in the Criminal Case.

In similar situations, courts in this Circuit have routinely entered a complete stay of civil proceedings, even where, unlike here, a defendant objects. *See, e.g.*, *SEC v. Milton*, No. 21 Civ. 6445 (AKH), Dkt. No. 40 (S.D.N.Y. August 8, 2022) (granting Government's motion for a full stay over defense objection); *SEC v. Sarshar*, No. 20 Civ. 6865 (GBD), Dkt. No. 35 (S.D.N.Y. June 3, 2021) (same); *SEC v. Durante, et al.*, No. 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) (after Government's initial motion for partial stay of discovery, fully staying discovery and proceedings in the matter); *SEC v. Shkreli, et al.*, No. 15 Civ. 7175 (KAM), 2016 WL 1122029, at *2-7 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, a full stay); *SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (granting Government's request for full stay of discovery for six months over defendant's objection while criminal investigation was proceeding but prior to any criminal charge).

I. **THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE**

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively,

5

Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions given the effect the Civil Case would have on the Criminal Case and the identity of claims and facts between the parallel actions.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC v. Credit Bancorp, Ltd.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the Government's interests in ensuring the enforcement of criminal law cannot be protected adequately by the existing parties in the Civil Case, none of whom represent the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83, 86 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties. The Government has a distinct and discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter. . . . Clearly neither the plaintiff nor the defendants have this identical interest." (citation and internal quotation marks omitted)).

Moreover, a trial in the Civil Case in advance of a related criminal trial could impair or impede the Government's ability to protect its interests in the enforcement of federal criminal law. The Civil Case and the related Criminal Case arise from the same alleged scheme. Holding a civil

trial before a criminal trial would create the possibility that there will be multiple trials covering the same fraudulent acts. This raises the probability that witnesses will be unnecessarily burdened by having to testify twice. In light of those circumstances, the Government respectfully submits that its application to intervene should be granted.

## II.     THE PROPOSED STAY IS APPROPRIATE

### A.     Applicable Law

This Court has the inherent power to stay proceedings in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action." (citations and internal quotation marks omitted)). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When considering whether to grant a stay, courts balance the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*SEC v. Treadway*, No. 04 Civ. 3464 (VM) (JCF), 2005 WL 713826, at *2-3 (S.D.N.Y. March 30, 2005) (quoting *In re Worldcom, Inc. Sec. Litig.*, Nos. 02 Civ. 3288 (DLC), 02 Civ. 4816 (DLC), 2002 WL 31729501, at *4 (S.D.N.Y. Dec. 5, 2002)); *see also Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (listing similar factors). "Balancing these

factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distrib.*, 152 F.R.D. at 39.

**B.     Discussion**

Application of these factors here overwhelmingly weighs in favor of the stay sought by the Government.

    *1.     The Extent of Overlap*

That the Criminal and Civil Cases involve nearly identical facts and issues weighs heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Id.* (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also SEC v. Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. No. 43 at 3 (S.D.N.Y. Mar. 1, 2016) (noting that "substantial overlap between the civil and criminal proceedings" weighs in favor of stay); *Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, the facts at issue in the Civil Case are also at issue in the Criminal Case. The facts at issue are substantially identical, and virtually all of the same documents, witnesses, and other evidence that would be used by the SEC to prove its claims would also be used to prove the Government's criminal charges against Dupont, Cronin, Kaplan, and Feldman. In other words, there is "substantial overlap between the civil and criminal proceedings." *Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. No. 43 at 2-3); *see also Shkreli*, 2016 WL 1122029, at *4.

Case 1:23-cv-05565-VM   Document 15   Filed 08/11/23   Page 11 of 16

### 2.   *Status of the Criminal Case*

The return of the Indictment is also a factor that weighs in favor of a stay.  *See Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. No. 43 at 3.   "[T]he strongest argument for granting a stay is where a party is under criminal indictment."   *Shkreli*, 2016 WL 1122029, at *5 (citation and internal quotation marks omitted).   Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment."  *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990).   As the court explained in *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*:

> A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved.

886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).   Thus, this factor also militates strongly in favor of a stay.

### 3.   *The Plaintiff's Interests*

The SEC consents to this Motion.   Therefore, there can be no argument that there would be prejudice to the plaintiff by staying the Civil Case.  *See Shkreli*, 2016 WL 1122029, at *5 (citing cases).

### 4.   *The Defendants' Interests*

Dupont, Cronin, Kaplan, Feldman, and Mendoza have indicated their consent to a stay in the Civil Case.   Moreover, granting a stay of the Civil Case to permit the Criminal Case to proceed to its conclusion would actually inure to the defendants' benefit, since a stay will permit them, for now, to avoid making the choice between, on the one hand, being prejudiced in the Civil

9

Case by the adverse inference that would result from their assertion of their Fifth Amendment rights, and, on the other, being prejudiced in the Criminal Case if they waived their Fifth Amendment rights and participated in discovery in the Civil Case.

### 5. *The Public Interest*

The public interest weighs heavily in favor of the stay proposed by the Government. As an initial matter, there is a public interest in ensuring that members of the public who would serve as witnesses in the Civil Case and the Criminal Case are not put to the expense and inconvenience of being called multiple times to testify regarding those matters. Allowing the Criminal Case to conclude before discovery proceeds in the Civil Case serves that interest, because the outcome of the Criminal Case may render certain civil discovery unnecessary or streamline it such that witnesses may not be required to testify twice.

The Government and the public also have an important interest in ensuring that the defendants do not use civil discovery or motion practice in the Civil Case to circumvent the well-founded restrictions that pertain to criminal discovery. Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act provide that, in criminal cases, the statements of Government witnesses shall not be the subject of discovery "until said witness has testified on direct examination" at trial, 18 U.S.C. § 3500.

The restrictions on criminal discovery that exist under the Federal Rules are designed to preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence, or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial");

*United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

Civil discovery in the Civil Case could require the disclosure of witness statements. To that end, courts in this District have repeatedly endorsed limitations on civil discovery in recognition of the fact that a civil litigant should not be allowed to use civil discovery to avoid the restrictions that would otherwise apply in criminal discovery to a criminal defendant. *See SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting Government's motion to stay, noting: "The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules"); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))); *Nicholas*,

569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment"). Indeed, the rationale underlying a stay is even stronger in an indicted matter, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very discovery process he seeks to use affirmatively. *See, e.g., SEC v. Chakrapani*, Nos. 09 Civ. 325 (RJS), 09 Civ. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y. June 29, 2010) (inviting the Government to renew its motion to stay discovery if the defendant intends to invoke the Fifth Amendment if noticed for a deposition); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants").

Therefore, in order to avoid circumvention of criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony, and because the defendants will not be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application.

### 6.     *The Interests of the Courts*

Considerations of judicial economy also weigh in favor of granting a stay. Courts have a strong interest in the efficient resolution of both the criminal and civil cases. Issues common to the cases can be resolved in the criminal proceedings, thereby simplifying related civil actions. *See SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a

criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding"); *SEC v. One or More Unknown Purchasers of Secs. of Global Indus., Ltd*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *Twenty First Century Corp.*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the outcome of the Criminal Case could directly affect the conduct, scope, and result of the Civil Case, this factor favors the Government's application.

*          *          *

In sum, and as set forth above, there is considerable overlap between the parallel proceedings; charges have been filed in the Criminal Case; there is no prejudice to the parties from the requested stay; there is a strong public interest in preventing the civil discovery rules from being used to improperly obtain discovery in the Criminal Case; and judicial economy is ensured by the requested stay.   Therefore, the balance of factors overwhelmingly favors the requested stay.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that its application

for a full stay be granted.

Dated: New York, New York
August 11, 2023

                                            Respectfully submitted,

                                            DAMIAN WILLIAMS
                                            United States Attorney

By: _____
                                            Margaret Graham
                                            Sarah Mortazavi
                                            Samuel P. Rothschild
                                            Assistant United States Attorneys
                                            One Saint Andrew's Plaza
                                            New York, New York 10007
                                            Telephone: (212) 637-2923 / 2520 / 2504